UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARY A. PESCE,

    Plaintiff,                                    Civil Action No. 05-70744

v.                                             HON. NANCY G. EDMUNDS
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Rosemary A. Pesce brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## **PROCEDURAL HISTORY**

On December, 18, 2001, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging an onset date of November 8, 2001 (Tr. 42-44, 155-157). After the Social Security Administration (SSA) denied her benefits,

she made a timely request for an administrative hearing, held on March 11, 2004 in Flint, Michigan (Tr. 24-29). Administrative Law Judge (ALJ) Ben S. Engelman presided (Tr. 167). Plaintiff, represented by attorney Lewis M. Seward, testified. (Tr. 170-190). Pauline McEachin, acting as Vocational Expert (VE) also testified (Tr. 190-194). On September 8, 2004, ALJ Engelman found that Plaintiff retained the ability to perform her past relevant work (Tr. 22). On January 6, 2005, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on May 12, 2005.

## BACKGROUND FACTS

Plaintiff, born March 17, 1962 was age 42 when the ALJ issued his decision (Tr. 22, 42). She completed ninth grade and worked previously as a nursing home activity aide, housekeeper, cook, and waitress (Tr. 58, 86). Plaintiff alleges that Fibromyalgia and Depression prevent her from working (Tr. 52).

### A.     Plaintiff's Testimony

Plaintiff, just short of her forty-second birthday at the time of hearing, testified that she left school before completing tenth grade (Tr. 170). She reported that she worked most recently as an activity assistant in a nursing home before her illness obliged her to stop in working in November, 2001 (Tr. 171). She indicated that her job duties included taking patients to and from activities, socializing with patients, and completing paperwork (Tr. 171). Plaintiff added that prior to holding the activity assistant's position she had worked at the same nursing home as a housekeeper and a cook (Tr. 173). She reported that her inability to perform the lifting requirements of the cooking and housekeeping positions required

necessitated her transfer to the activity assistant's job (Tr. 173). She testified that although the activity assistant position obliged her to be "up and off" her feet frequently, it was the least strenuous job she had held, added that before commencing work at the nursing home, she worked as a waitress for three years (Tr. 174).

Plaintiff reported that since applying for benefits she had married, stating that her husband worked seasonally as a roofer (Tr. 174). She testified that all-over body pain prevented her from walking and created constant fatigue (Tr. 175). She stated that her level of pain varied throughout the day, indicating that she experienced the greatest degree of pain in her left hip and hands (Tr. 175). She attributed her pain to a diagnosis of arthritis as well as ice skating accidents as a child and a late 1990s car accident in which she sustained a left side injury (Tr. 175). She added that she had been diagnosed with Raynaud's Syndrome, which created additional hand and foot pain (Tr. 183).

Plaintiff reported sleeping fitfully, adding that she spent 80 percent of her waking hours reclining (Tr. 184). Plaintiff stated that she had been taking Welbutrin for depression for approximately a year and had received a prescription for Elavil a few weeks prior to the hearing (Tr. 185). She testified that she had undergone psychiatric counseling until her medical insurance was discontinued, reporting that she continued to experience mood swings and crying spells (Tr. 186).

Plaintiff testified that she had been taking in excess of four Vicodin each day for the past six years (Tr. 176). She indicated that she had abandoned attempts to undergo physical therapy due to her inability to perform the exercises (Tr. 177). She reported that she

normally spent her waking hours watching television, adding that she cooked small meals for her husband, son, and daughter, adding that she did not perform much housework (Tr. 177). She acknowledged at a later point in the hearing that she continued to wash the laundry and grocery shop (Tr. 187). In addition to watching television and cooking, Plaintiff stated that she routinely drove her daughter to school and attended church two or three times a week (Tr. 178). She testified that she was able to tolerate the 45 minute services by taking her shoes off and elevating her feet (Tr. 187).

Plaintiff testified that she was unable to perform assembly or packaging work due to hand pain (Tr. 178-179). She stated that she believed she would also be unable to work as a security monitor because she experienced mental confusion as a result of her Vicodin usage (Tr. 179). In addition she stated that she would be a poor candidate for employment because she had vomited four times in the past year (Tr. 179). She reported that on occasion, she woke up to find that she was vomiting (Tr. 180). She estimated that she could walk up to a block on a good day, stand for up to 10 minutes, and sit for between 15 and 20 minutes (Tr. 188-189). She testified that her decreased grip strength prevented her from pouring coffee or lifting a gallon milk container with one hand (Tr. 189).

Plaintiff testified that she had become increasingly anxious about driving abilities (Tr. 180). She indicated that her inability to concentrate impaired her ability to perform household chores (Tr. 181). She reported that she did not read the newspaper, then conceded that she read the obituaries (Tr. 181). She stated that she did not balance her checkbook, but kept track of her account balance by visiting the bank once a week (Tr. 182).

**B.     Medical Evidence**

In January, 1999, an MRI of Plaintiff's lumbar spine showed normal results (Tr. 96). A subsequent MRI, performed in April, 2000 on her cervical spine, was also unremarkable (Tr. 95). In December, 2000, Plaintiff sought emergency treatment for uncontrolled vomiting (Tr. 97). Medical personnel administered IV fluids, stabilizing her condition (Tr. 98). Upon discharge, Kathleen Cowling, D.O. prescribed Phenergan to be taken if needed (Tr. 98). In March, 2001 Jonathan Rene, M.D. noted that Plaintiff's "presentation and finding complex are very suggestive for Fibromyalgia" (Tr. 109). The next month, Dr. Rene strongly encouraged her to participate in a low impact exercise program (Tr. 107). He noted that she continued to use Vicodin, stating that she "cannot do without it" (Tr. 107). In June, 2001, Dr. Rene prescribed Ambien 5 mg, after Plaintiff complained that Elavil prevented her from sleeping (Tr. 106).

In December, 2001 Plaintiff's treating physician Lester E. Webb, M.D. completed a questionnaire, finding that she suffered from widespread musculoskeletal pain, morning stiffness, anxiety, depression, and dysphoria, noting that her symptoms significantly limited her ability to function (Tr. 111-112). He premised his diagnosis on Dr. Rene's March, 2001 diagnosis of Fibromyalgia (Tr. 112).

In January, 2002 Rheumatologist Albert Manlapit, M.D. declined Dr. Webb's referral of Plaintiff for evaluation after discovering that she was currently processing a disability application, that "[i]t is our experience that patients undergoing these proceedings are heavily affected by secondary gain so that it is difficult to get an accurate history of their symptoms

or any faithful account of any positive therapeutic response" (Tr. 152). Plaintiff told Dr. Manlapit that she wished to see another rheumatologist (Tr. 152).

A Physical Residual Functional Capacity Assessment performed in April, 2002 found that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand or sit for six hours in an eight hour workday, and retained an unlimited ability to push and pull (Tr. 119). (Tr. 119-125). The assessment found further that Plaintiff was limited to occasional climbing and crawling, but did not experience further postural limitations (Tr. 120). An addendum to the same report noted that Dr. Webb found no significant mental or emotional problems, concluding that Plaintiff's claims were partially credible (Tr. 115).

In May, 2002 Dr. Webb, in contrast to the Residual Functional Capacity Assessment's findings, concluded that Plaintiff was unable to bend, stoop, climb, kneel, balance, push/pull, squat crawl, or crouch (Tr. 149). He concluded further that Plaintiff could perform no lifting or carrying, and was precluded from working at heights, operating heavy machinery, and exposure to marked tempertaure changes or dust, fumes, gases, or chemicals (Tr. 150).

In July, 2003 Ruth A. Walkotten, D.O., found that Plaintiff could sit for a total of one hour in an eight hour workday, and limit standing or walking activities to 15 minutes (Tr. 128). She also found that Plaintiff could not perform simple grasping, reaching pushing/pulling, fine manipulations and could not operate foot or leg controls (Tr. 128). She concluded that Plaintiff could never bend or crawl, and should be limited to only occasional squatting, kneeling, or reaching above shoulder level (Tr. 128).

In January, 2004, progress notes composed by J. Bender, D.O. state that Plaintiff suffering depression and fibromyalgia, did not experience suicidal ideation (Tr. 154).  Dr. Bender assigned Plaintiff a GAF of 40[1] (Tr. 154).   In February, 2004, Dr. Webb, who noted that he had treated her for 32 years, concluded that Plaintiff would be unable to perform sedentary work on a regular and continuous basis,  finding that "her distracting pain which requires her to change positions frequently, along with her reliance on extra strength Vicodin, taken four times daily, would significantly impair her functional abilities (Tr. 137).

### C. Vocational Expert Testimony

VE   Pauline McEachin stated that based on Plaintiff's testimony that her work as an activity aide was performed at the light level of exertion, adding that the position did not require the repetitive use of her hands (Tr. 190-191). She confirmed that based on Plaintiff's description, her activity director work was consistent with the manner it is generally performed (Tr. 192).  She found that if Plaintiff needed to recline for up to 80 percent of her work time, she would be unable to perform her former job (Tr. 192).  ALJ Engelman  posed the following question to the VE:

> "[L]et's assume that as a result of pain, side effects (sic) of medication or depression one's ability to concentrate is affected negatively.  So let's start at end of a simple spectrum of no impairment or mild impairment.  The other extreme would be severe or marked and then the middle would be moderate . . . . How would that affect – along that spectrum where would it preclude or

---

[1] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000).

not allow someone to perform the job of nursing home activity aide?

(Tr. 192).  The VE found that an individual with a *markedly* impaired ability to concentrate could not perform the job of activity aide, however, an individual experiencing a *moderate* concentrational impairments could hold the same position (Tr. 193-194).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Engelman found severe impairments of widespread bodily pain and depression[2] (Tr. 17).  Nonetheless, he determined that although Plaintiff had  severe impairments, neither met or equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 17 ).

He concluded that Plaintiff could perform her past relevant work as an assistant activity director, finding that she retained the following residual functional capacity:

> "light work that provides for a sit/stand option, involving occasional crawling and no repetitive use of the hands and consideration of a mild concentration deficit"(Tr. 26).

While he conceded that Plaintiff experienced "some discomfort and emotional stress," he rejected her allegations of disability, citing her daily activities which included cooking, laundry, driving her child to and from school and visiting with relatives (Tr. 19). He also noted that Plaintiff had not required long-term hospitalization for her physical or mental difficulties, commenting further that "no surgical intervention or other aggressive treatments were prescribed" (Tr. 19).

---

[2]He rejected Plaintiff's allegation of Fibromyalgia, stating that the "clinical and diagnostic record does not support her complaints of Fibromyalgia" (Tr. 17).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A.    Treating Physician

Plaintiff argues that ALJ Engelman failed to perform a proper analysis of her treating physician's disability findings. *Plaintiff's Brief* at 3. She cites 20 CFR 404.1527(d), which requires the ALJ to consider the examining relationship, treatment relationship, consistency, supportability, specialization, and other applicable elements in allotting weight to the physician's opinion. *Id.* at 4-5. She maintains that the ALJ issued a "terse," two sentence rejection of Dr. Webb's disability finding was insufficient to meet the regulation's requirement.[3] *Id*. at 4.

---

[3]The "terse" analysis performed by the ALJ reads as follows: "The undersigned has considered the statements from the claimant's family physician, Dr. Webb, suggesting the claimant is unable to work (Tr. 20). Upon review of the doctor's office notes including the records as a whole, the statements are accorded minimal weight, as they

-10-

Generally, "the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano,* 613F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). *See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991)( "[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

The regulation governing the treating physician analysis does not forbid the ALJ from writing tersely. Although quite succinct, the ALJ's treating physician analysis comports with the requirements set out in 20 CFR 404.1527(d), acknowledging both Plaintiff's examining and treating relationship with Dr. Webb; along with inconsistencies between his disability opinion and his treating notes as a whole; and his specialization (family doctor) (Tr. 20).

Further, the entire decision addresses Dr. Webb's notes numerous times (Tr. 16, *at* ¶¶2, 3, 4; 17, 20). The ALJ noted that Dr. Webb's observation that Plaintiff

---

appear to be based entirely on the claimant's subjective complaints" (Tr. 20).

suffered from depression, when pronouncing her disabled, stood at odds with his exam notes that concluded that she "did not have a significant mental or emotional problem that limited activities, interests, and ability to relate to others" (Tr. 16). The ALJ questioned Dr. Webb's reference to Plaintiff's Vicodin use as a reason to find her unemployable, pointing out that another physician questioned her alleged need for "strong narcotics," urging her instead to try over-the-counter arthritis medication (Tr. 19). Pursuant to *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 (6th Cir. 2004), the ALJ properly supported his rejection of the treating physician's disability pronouncement by citing other portions of the medical record that conflicted with the treating physician's opinion.[4]

### B. Residual Function Capacity

Plaintiff argues next that the Residual Functional Capacity (RFC) did not adequately account for her depression, recognized at Step two by the ALJ. *Plaintiff's Brief* at 7. She argues further that the VE's testimony that she could perform her former job as an assistant activities director with a *moderately* impaired level of concentration does not comport with the Commissioner's definition of moderate limitations. *Id.* at 9. Finally, Plaintiff contends that internal inconsistencies found in

---

[4]Dr. Walkotten's disability report also stands at odds with other large portions of the record (Tr. 128). Among the contradicted findings is her opinion that Plaintiff could not operate foot controls or perform even simple grasping, contradicting Plaintiff's own testimony that she drove her daughter to and from school each day (presumably steering and applying the brake pedal), grocery shopped, and drove to church several times each week (Tr. 178).

the ALJ's opinion, which found that Plaintiff had *moderate* deficiencies in concentration in the Psychiatric Review Technique, but *mild* concentrational limitations in the hypothetical question to the VE and resultant RFC. *Id*. at 6.[5]

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id. (quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

Under SSR 82-62, a three-prong test must be met in order to find that a claimant can return to her past relevant work "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." An ALJ is not required, but is nonetheless permitted to use a VE. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987) ; *Walker v. Secretary of Health and Human Services,* 884 F. 2d 241, 245

---

[5]Actually, the "inconsistencies" referred to by Plaintiff are as follows: the PRT and question to the VE stated that Plaintiff experienced *moderate* limitations (Tr. 18, 193-194), while the RFC, stated at Tr. 20, 21 found that she experienced only *mild* deficiencies.

-13-

(6th Cir. 1989). *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814 (3rd Cir. 2003): "At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ. The Commissioner has noted that such experts are used to resolve complex vocational issues." (internal citations omitted).

First, Plaintiff's argument that the VE defined "moderate" differently from the Commissioner stands without record support. At the hearing, the ALJ inquired at length about the level of concentrational function necessary to perform Plaintiff's former job (Tr. 193-94). The ALJ's questions employed the same terms of art as those used to classify concentrational abilities in the PRTF–mild, moderate, marked, etc. Likewise, the VE, using the same terminology, found that an individual experiencing moderate concentrational limitations could perform the job of assistant activities director as Plaintiff described her former work responsibilities (as well as the way the position is generally performed). *See* SSR 82-61.[6] Plaintiff presents no evidence suggesting that the VE instead used the term "moderate" to mean insignificant or trivial. Plaintiff's related argument, based on *Bankston v. Commissioner*, 127 F.Supp.2d 820, 826 (E.D. Mich. 2000), that moderate deficiencies in concentration may not be consistent with full time employment, is also unavailing. Rather than stating flatly that a moderate concentrational deficiency mandates

---

[6] Pursuant to SSR 82-61, at Step Four, the Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.

remand, the *Bankston* court found that the PRTF "was secondary to a VE's opinion on the Claimant's pace and ability to concentrate. '[R]egardless of whether the ALJ characterized claimant's deficiencies of concentration, persistence, and pace as occurring 'often' or 'frequently,' the VE was aware of claimant's actual rate of production...and...claimant's ability to concentrate.'" *Id*. At 826; *Gieseking v. Secretary of HHS*, 1994 WL 228239, 6 (6th Cir. 1994). The VE's findings, drawn from Plaintiff's description of her former work, indicate that a person experiencing moderate concentrational limitations would nonetheless retain the capacity for Plaintiff's former position.

Likewise, although Plaintiff also argues that the RFC did not adequately reflect her impairment of depression, as noted by the ALJ, she testified that she maintained good relations with her immediate and extended family, grocery shopped, visited her bank, and attended church regularly. The ALJ properly discounted Dr. Bender's onetime examination of Plaintiff, resulting in a GAF assessment of 40, noting that it stood contrary to the great weight of record evidence. Plaintiff asserted at the hearing that she was unable to work, stating that she no longer retained even the presence of mind to dial 911 if required to work as a security monitor. In contrast, she admitted that in addition to her cooking, banking, and shopping activities, she bore the ongoing responsibility of transporting her daughter by car to and from school on a daily basis (Tr. 178,179). She has not undergone hospitalization or sought treatment on a continued basis for mental health problems. Substantial evidence, culled from the

-15-

record, supports the ALJ's decision to reject a portion of Plaintiff's allegations of limitations due to depression.

Finally, Plaintiff's argument that "internal inconsistencies" in the administrative opinion mandate remand also fails. The ALJ found in the RFC at Tr. 20 and in the "findings" at Tr. 21 that Plaintiff experienced only "mild" concentrational deficiencies - as opposed to "moderate" in the PRTF and in the hypothetical discussion (Tr. 18, 193-194). Although in another context such a discrepancy might direct a remand, in the present case, since the VE stated explicitly that Plaintiff could possess moderate concentrational difficulties and still perform her former job, the ALJ's apparent misstatement that she experienced a lesser degree of impairment does not affect his ultimate finding that she retained the ability to perform the job of assistant activities director.[7] I note that Plaintiff has not presented a particularly strong case for benefits, and as a whole, the record points overwhelmingly to a finding of non-disability. It appears that upon remand, at best, Plaintiff could expect a reissued decision, again denying benefits, changing the word "mild," at Tr. 20 and 21 to "moderate." "[W]here remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th

---

[7]The VE stated that although Plaintiff could not perform her former position if she possessed *marked* limitations, she could experience a moderate concentrational impairment and still work, agreeing with the ALJ's statement that if Plaintiff had less than a moderate limitation that "it's just a redundancy" (Tr. 194).

Cir. 2004); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the

court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                        s/R. Steven Whalen
                                                        R. STEVEN WHALEN
                                                        UNITED STATES MAGISTRATE JUDGE

Dated: March 13, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 13, 2006.

                                                        s/Susan Jefferson
                                                        Case Manager